[Cite as *State v. Harris*, 2023-Ohio-506.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220251 |
| | | TRIAL NO. B-1906789 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| LIONEL HARRIS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed As Modified

Date of Judgment Entry on Appeal: February 22, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Lionel Harris,* pro se.

**Bock, Judge.**

{¶1} In this appeal, defendant-appellant Lionel Harris challenges the trial court's entry denying his motion to vacate court costs and fines. For the following reasons, we recast his request to vacate his fines as a petition for postconviction relief and affirm the trial court's judgment as modified to reflect a dismissal of that petition and his motion to vacate court costs.

## I.     Facts and Procedure

{¶2} In 1992, a jury convicted Harris and a codefendant of aggravated murder. Initially, Harris's case was assigned to Judge Nurre. Yet, Judge Schott, a visiting judge, presided over Harris's trial. At his sentencing hearing, Judge Schott imposed a life sentence with parole eligibility and "$25,000 on both defendant[sic]." The corresponding entry, signed by Judge Nurre on behalf of Judge Schott, stated:

Defendant is sentenced to be imprisoned in Department of Corrections

FOR A TERM OF LIFE.

(ELIGIBILITY FOR PAROLE IN TWENTY (20) YEARS)

PAY COSTS

($25,000.00 FINE)

{¶3} Through a series of original actions in this court, Harris has unsuccessfully attempted to challenge the propriety of Judge Nurre's entry. In 2013, Harris petitioned this court for writs of mandamus and prohibition, arguing the entry signed by Judge Nurre was void. *See State ex rel. Harris v. Hamilton Cty. Court of Common Pleas*, 139 Ohio St.3d 149, 2014-Ohio-1612, 9 N.E.3d 1057, ¶ 2 ("*Harris I*"). We dismissed the petitions. *Id*. at ¶ 1. The Ohio Supreme Court affirmed our dismissal and characterized Judge Nurre's entry as a nondiscretionary, ministerial act, because he "merely journalized th[e] sentence without alteration." *Id*. at ¶ 10.

2

{¶4} In 2018, Harris successfully petitioned this court for a writ of mandamus to compel the Hamilton County Clerk of Courts to produce public records relating to the assignment of his case to Judge Nurre, the transfer of the case to visiting Judge Schott, and the transfer of the case back to Judge Nurre. *See State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, ¶ 4 ("*Harris II*").

{¶5} In 2021, Harris petitioned this court for a writ of mandamus, seeking an order directing the Hamilton County Court of Common Pleas to vacate his sentence and resentence him and to return funds and court costs paid. *See State ex rel. Harris v. Hamilton Cty. Clerk of Courts*, 168 Ohio St.3d 99, 2022-Ohio-477, 196 N.E.3d 777, ¶ 1 ("*Harris III*"). The Ohio Supreme Court affirmed this court's dismissal, explaining that a sentence may be challenged through a collateral attack "in an extraordinary writ action" if the sentence is void for lack of personal or subject-matter jurisdiction. *Id*. at ¶ 8. Because Harris challenged the *exercise* of jurisdiction, any alleged sentencing error would render his sentence voidable, and sentencing errors are inappropriately challenged in mandamus actions. *Id*. Therefore, the Ohio Supreme Court dismissed his appeal. *Id*.

{¶6} In 2022, Harris moved to vacate his court costs and fines under R.C. 2947.23. Harris argued that Judge Schott ordered an unspecified $25,000 financial obligation, and that Judge Nurre lacked authority to impose $25,000 in court costs and fines. The trial court "conducted a review of the record" and denied Harris's motion to vacate costs and fines. It is from that denial that Harris appeals, raising six assignments of error.

## II. Law and Analysis

### A. *Court Costs and Fines*

{¶7}  In his first assignment of error, Harris maintains that the trial court abused its discretion when it denied his motion to vacate court costs and fines. The record is clear that Harris was fined $25,000, the maximum amount permitted under R.C. 2929.02(A) ("the offender may be fined an amount fixed by the court, but not more than twenty-five thousand dollars."). Harris was also assessed $2,335.92 in court costs. In his motion, Harris conceded that the fine and court costs were satisfied in 1992. The record indicates the same.

{¶8}  As an initial matter, we pause to emphasize the "major distinction between fines and court costs." *Strattman v. Studt*, 20 Ohio St.2d 95, 102, 253 N.E.2d 749 (1969). Court costs are "a civil debt," and entirely separate from a criminal sentence. *State v. Ushery*, 1st Dist. Hamilton No. C-120515, 2013-Ohio-2509, ¶ 15. By their very nature, court costs are nonpunitive. *See State v. Swift*, 2d Dist. Montgomery No. 20543, 2005-Ohio-1595, ¶ 21. Mere participation in a court proceeding triggers court costs, which are "assessed to defray the administrative costs of litigation." *Strattman* at 102-103; *See, e.g., State v. Hunter,* 1st Dist. Hamilton No. C-200160, 2021-Ohio-2423, ¶ 17. In contrast, R.C. 2929.02(A) vests a trial court with the authority to impose up to $25,000 in fines on an individual convicted of aggravated murder as part of the criminal sentence. As part of a sentence, "fines 'serve a punitive, retributive, or rehabilitative purpose.' " *State v. Housley*, 2d Dist. Miami No. 2020-CA-1, 2020-Ohio-4489, ¶ 9, quoting *Strattman* at 102. And so we review Harris's $25,000 fine "just as we would any other" criminal sentence. *State v. Owens*, 1st Dist. Hamilton No. C-170413, 2018-Ohio-1853, ¶ 5.

{¶9} Beginning with court costs, Harris's motion to vacate court costs was not properly before the trial court. We recognize that his motion invoked the trial court's continuing jurisdiction "to waive, suspend, or modify the payment of costs of prosecution, including any costs under section 2947.231 of the Revised Code at the time of sentencing or anytime thereafter." R.C. 2947.23(C). But "R.C. 2947.23(C) does not compel or even allow a trial court to order reimbursement of court costs already paid." *State v. Braden*, 158 Ohio St.3d 462, 2019-Ohio-4204, 145 N.E.3d 235, ¶ 30. Rather, R.C. 2947.23(C) is the proper mechanism to challenge "the payment of costs *if* costs remain." (Emphasis added.) *Id.* In his motion, Harris acknowledged that his court costs were satisfied in 1992. Indeed, Harris attached a copy of the docket indicating as much. As the Ohio Supreme Court recognized in *Braden*, the trial court was unable to issue an order for Harris's reimbursement. In short, Harris's motion to vacate court costs was not properly before the trial court.

{¶10} Turning to Harris's $25,000 fine, the trial court lacked jurisdiction to consider his motion, and his arguments are barred by res judicata. In his motion Harris asked the court to modify or vacate his fine under R.C. 2947.23(C) and argued against recasting his motion as a petition for postconviction relief under R.C. 2953.21. First, a trial court retains its jurisdiction under R.C. 2947.23(C) for the limited purposes of considering whether to "waive, suspend, or modify the payment of costs of prosecution." The statute makes no mention of financial sanctions or fines. And again, the law distinguishes fines from court costs. Therefore, we must treat Harris's motion as a request to modify or vacate part of his criminal sentence.

{¶11} To that end, we construe his motion as an untimely petition for postconviction relief, which is the proper mechanism to ask the trial court to modify or vacate a criminal sentence. *See* R.C. 2953.21(A)(1)(a). Indeed, "where a criminal

defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21." *State v. Reynolds*, 79 Ohio St.3d 158, 160, 679 N.E.2d 1131 (1997). Harris challenged his sentence and filed his motion after his direct appeal. While Harris insisted that he was *not* alleging a violation of a constitutional right, he maintained that Judge Nurre imposed his sentence outside of Harris's presence. In support, Harris relied on this court's opinion in *State v. Carpenter*, 1st Dist. Hamilton No. C-950889, 1996 Ohio App. LEXIS 4434, 4 (Oct. 9, 1996). But in *Carpenter,* we explained that defendants "ha[ve] a right of due process, embodied in Crim.R. 43(A), to be present when [the defendant's] sentence was modified." *Id.* Harris's motion is properly understood as a petition for postconviction relief. In any event, his petition is untimely, as it was filed outside of the 365-day deadline under R.C. 2953.21(A)(2)(a).

{¶12} Further, Harris's contentions are barred by res judicata. Res judicata bars a "convicted defendant from litigating a postconviction claim that was raised or could have been raised at trial or on direct appeal." *State v. Bethel,* 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 17, citing *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. The facts relevant to Harris's claim were established at his sentencing hearing in 1992. Harris's claim is limited to facts that were in the record at the time of his direct appeal.

{¶13} Yet, Harris maintains that he was unable to raise this argument on direct appeal due to the "terrible condition" of the trial transcripts in 1992. In other words, Harris suggests he could not have litigated this issue in the first action. In Harris's direct appeal, we denied him the opportunity to enter a corrected transcript into the record. While we affirmed Harris's conviction, we recognized in a footnote the

6

"many problems with the transcript of the proceedings, including many passages that read incoherently." *State v. Harris,* 1st Dist. Hamilton Nos. C-920151 and C-920158, 7 (Feb. 25, 1994) fn. 10. And the dissent described the transcripts as "incoherent and incomprehensible." *Id.* at 25 (Doan, J., dissenting). But critically, these transcript defects avoid the portions of the sentencing transcript relevant to this matter. At all times, the transcript included Judge Schott's imposition of a life sentence and "$25,000 on both defendant[sic]." In other words, Harris could have challenged his fine on direct appeal, but failed to do so. Therefore, res judicata prohibits Harris from raising his claim now.

{¶14} In sum, the first assignment of error is dismissed. Because Harris's court costs were satisfied in 1992, the trial court lacked authority under R.C. 2947.23(C) to entertain this claim. And we recast Harris's challenge to his $25,000 fine as an untimely petition for postconviction relief over which the trial court lacked jurisdiction. Finally, even if the trial court had jurisdiction to hear Harris's challenge to his fine, his claim would be barred by res judicata.

B. *Judicial Authority*

{¶15} In his second assignment of error, Harris challenges Judge Hatheway's authority to rule on his motion. According to Harris, irregularities surrounding Judge Hatheway's assignment to his case deprived her of her judicial authority to enter her order denying his motion. Harris asserts that the improper transfer of his case constitutes a violation of his state and federal constitutional rights to due process and equal protection under the law.

{¶16} But a direct appeal is not the proper avenue to challenge Judge Hatheway's authority. The power and authority of a judicial officer "cannot be collaterally attacked" in an appeal of that judicial officer's order. *State v. Hill*, 2d Dist.

Montgomery No. 24966, 2012-Ohio-5210, ¶ 22. As such, this court may not review a judicial officer's exercise of her power in an appeal of an adverse judgment rendered in the underlying action. *State v. Baumgartner*, 6th Dist. Ottawa No. OT-03-013, 2004-Ohio-3907, ¶ 11. Because this issue is not reviewable on direct appeal, we overrule Harris's second assignment of error.

C. *Remaining Assignments of Error*

**{¶17}** In his remaining assignments of error, Harris challenges a few irregularities that have occurred in the course of this appeal.

**{¶18}** In his third and fourth assignments of error, Harris maintains the Hamilton County Clerk of Courts violated his rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution. First, he contends the clerk violated his rights by providing allegedly conflicting deadlines for filing his appellant brief. Second, he alleges the clerk refused to file his sentencing transcripts, in violation of his constitutional rights. But Harris invokes our appellate jurisdiction under R.C. 2501.02(C), which limits our authority to "review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals within the district." The clerk of courts is not a court of record. And these claims raise issues that are outside the scope of the judgment of the trial court. So, these assignments of error are not properly before this court on appeal.

**{¶19}** Moreover, these claims are moot. An issue is moot when the parties have no legally cognizable interest in the outcome, or an event " 'renders it impossible for the court to grant any relief' " to an aggrieved party. *State ex rel. Gaylor, Inc. v. Goodenow*, 125 Ohio St.3d 407, 2010-Ohio-1844, 928 N.E.2d 728, ¶ 10, quoting *Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910), syllabus. While Harris argues that the scheduling ambiguities violated his rights, in August 2022 this court issued an order

8

extending the deadline for Harris's appellate brief to September 21, 2022. Harris successfully filed his brief. And while Harris contends his rights were violated when the clerk failed to transmit a transcript of his scheduling hearing, we confirmed in that same order that the transcript pages requested by Harris had been delivered to this court. In sum, that order ended the controversy and renders it impossible to grant any relief to Harris on these claims.

{¶20} Still more, his sixth assignment of error is moot. Harris contends that the trial court attempted to deny him his right to an appeal when it failed to order service of its decision. But our consideration of his appeal renders this assignment of error moot. Therefore, we dismiss his third, fourth, and sixth assignments of error.

{¶21} Finally, Harris argues that he was denied his right to equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution in his fifth assignment of error. As we understand it, Harris is raising a class-of-one claim under the Equal Protection Clause. Harris carries a heavy burden to show that he " 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Clark v. Adult Parole Auth.,* 151 Ohio St.3d 522, 2017-Ohio-8391, 90 N.E.3d 909, ¶ 15, quoting *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Harris has failed to establish the elements of a class-of-one claim under the Equal Protection Clause. Therefore, we overrule his fifth assignment of error.

### III.    Conclusion

{¶22} In sum, we dismiss Harris's assignments of error. The trial court's judgment is modified to reflect a dismissal of Harris's motion and petition for postconviction relief. We affirm that judgment as modified.

Judgment affirmed as modified.


**CROUSE, P.J.,** and **WINKLER, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.